## THE JOSEPH STICKNEY.

### LOUTH v. THE JOSEPH STICKNEY.

*(District Court, S. D. New York. May 21, 1887.)*

NEGLIGENCE—CHARTER OF TUG—LOWER CABIN—CONTRIBUTORY NEGLIGENCE.
    The tug J. S. was chartered to take a club of gentlemen to sea to witness the races. The libelant, the superintendent of the club, in searching for berths, was referred by a deck-hand to the lower cabin, which was in the bottom of the stern, and was approached by a stairway, the door of which was hooked open. The room had eight berths, not fitted for passengers, and used only by the engineer and two firemen as a sleeping room. It was somewhat

dark, being lighted mainly by the open door. The propeller shaft ran just beneath the floor, a part of which was made movable for the purpose of oiling the shaft. The libelant, in crossing the floor, put his foot in the opening, which was partly uncovered, and received injuries for which this suit was brought. *Held*, upon the facts, that the room was not ostensibly a *private* room, into which the libelant had no right to enter, but one which, being open, the tug was bound to keep free from danger to those who might enter; but that the libelant, not having exercised due care, should recover, as in the case of *The Max Morris*, 28 Fed. Rep. 881, his expenses and disbursements only.

In Admiralty.
*Roome & Roome*, for libelant.
*E. D. McCarthy*, for claimant.

BROWN, J. In September, 1885, the steam-tug Joseph Stickney was chartered to take the Larchmont Yacht Club down the bay to witness the races. The libelant acted as superintendent of the club; and while upon the passage, and looking about the boat to see what provisions there were for the comfort of the passengers in case of sea sickness or other emergency, he made inquiries, of a young man, one of the deck-hands, in regard to berths, who stated that there were some in the lower cabin, in the bottom of the ship. On going in the direction pointed out, the libelant found a door open, and hooked back. He descended, accompanied by a companion, and found a somewhat dark cabin, with eight berths in it, none of which were fitted up for use except three, which were occupied by the engineer and two firemen. The main shaft ran fore and aft through the center of the room, a few inches below the floor. It required oiling frequently, and a portion of the flooring, about three feet long by a foot and a half wide, was movable so as to be taken up and put down for this purpose. At this time a part of the opening was uncovered, the boards having been laid aslant. The libelant, in crossing the cabin, put his foot in the opening, and it was caught by the revolving shaft, and severely injured.

Although it is clear that the berths in the lower cabin were not at this time fitted up for the use of the passengers, and that very probably the lower cabin was not expected by the master to be used by them, yet, looking at all the circumstances of the case, the general design, size, and construction of the lower cabin, and the ordinary use of such rooms, I cannot find that it was ostensibly a private apartment, for the use of the engineer and firemen only, where the libelant, on approaching it, had apparently no business to be, or into which he entered at his own risk; but that it was a room rightly available, under the charter, for the uses of the club, if berths became necessary; and that its open door, considering that it was a cabin, and considering the easy and ready access to it, was a reasonable indication thereof to the libelant, and an inducement to him to enter for the purpose of examination, and of finding such accommodations as it might afford to those who might need it, and for whose comfort he was properly making provisions. Had such a cabin been intended to be excluded from the use of the members of the club, and from even any entrance, the door to it should have been kept

closed; not hooked wide open. *The Pilot Boy*, 23 Fed. Rep. 103; *The Guillermo*, 26 Fed. Rep. 921; *Anderson v. Scully, post,* 161; *Sweeny v. Old Colony, etc.,* 10 Allen, 372; *Walker v. Midland R. Co.,* Alb. Law J., January 8, 1887.

I think it was the duty of the boat, therefore, to keep the floor in a reasonably safe condition for such persons as might go there while it was ostensibly open to the passengers, and that the improper adjustment of the boards over the opening was negligence on the part of the boat. I cannot, however, regard the libelant as free from fault. His proper course to ascertain what provisions there were for berths was to inquire of the master, or some officer of the ship, instead of exploring the vessel on his own account. It is clear from the evidence that no preparation had been made for the use of the lower cabin by the club upon this trip. Had inquiry been made of the officers, who were aware of the condition of the lower cabin, and of the uses then actually made of it, cautions would doubtless have been given before sending strangers into it. Moreover, I think, upon the evidence, that the room was not so dark, that the libelant, after being in it some little time, as he was, could not have seen the opening, had he acted with due caution. The noise and vibration caused by the revolving shaft were, at least, some notice that there was machinery near requiring care on his part. While this neglect on the libelant's part does not deprive him of all relief, under the decision in the case of *The Max Morris,* 24 Fed. Rep. 860, affirmed 28 Fed. Rep. 881, and cases there cited, I allow him, under the circumstances, the disbursements proved, including the wages of his substitute during his confinement, amounting in all to $206, with costs.